*⅃/ƒ*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MICHAEL J. MURPHY,

                    Plaintiff,

      -against-

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,

                  Defendant.

-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**CV-12-4504 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Michael J. Murphy brings this action, pursuant to 42 U.S.C. §§ 405(g) and

1383(c), seeking judicial review of the Social Security Administration's ("SSA") decision that he

is not disabled and therefore not entitled to supplemental security income ("SSI"). The Acting

Commissioner of Social Security ("the Commissioner") has filed a Motion for Judgment on the

Pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the

Commissioner's motion is DENIED, Plaintiff's motion is GRANTED, and this case is

REMANDED to the SSA for further proceedings.

I.      **BACKGROUND**

      Plaintiff was born on June 2, 1958. (Administrative Record ("Rec.") (Dkt. 19) at 67,

131.) He has previously worked as a police officer and, most recently, as a security guard. (Id.

at 141, 151-53, 207, 690.)

      On July 15, 2011, Plaintiff filed an application for SSI benefits (id. at 131-32), claiming

that he had been disabled since February 28, 2010, due to anxiety disorder, post-traumatic stress

disorder ("PTSD"), major depressive disorder, panic attacks, chronic sinusitis, and

gastroesophageal reflux disease ("GERD") (id. at 140). The SSA denied his application on November 16, 2011. (Id. at 67, 71-76.)

Plaintiff requested a hearing on his application which was held before Administrative Law Judge Jay L. Cohen ("ALJ") on February 21, 2012. (Id. at 25-66.) Plaintiff, represented by counsel, testified at the hearing, as did medical expert Sharon Grand, Ph.D., and vocational expert Amy Leopold. (Id.) On March 28, 2012, the ALJ issued a written decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. (Id. at 5-24.) Plaintiff requested that the SSA Appeals Council review the ALJ's unfavorable decision. (Id. at 207-11.) The Appeals Council denied Plaintiff's request for review on August 29, 2012 (id. at 1-4), rendering the ALJ's decision the final decision of the Commissioner. See 42 U.S.C. § 405(g).

On September 10, 2012, Plaintiff, now proceeding pro se, filed the instant Complaint seeking judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the SSA's decision that he was not disabled and therefore not entitled to SSI. (Compl. (Dkt. 1).) The Commissioner moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Def. Mem. (Dkt. 17).)

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a

claim. See Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B.    Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) his findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

## C.    Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423.  A claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The impairment must be of "such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4).  In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity."  If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe."  If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations.  These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment.  If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work.  If the residual functional capacity is consistent with prior employment, benefits are denied.

4

If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (alterations omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner to "demonstrate[] that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2).

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id.

## III.    DISCUSSION

In his pro se Complaint, Plaintiff avers that the ALJ's conclusion that he was not disabled under the Social Security Act "was erroneous, not supported by substantial evidence on the record[,] and/or contrary to the law." (Compl. at 2.) Conversely, the Commissioner's Motion to Dismiss for Judgment on the Pleadings argues that the ALJ correctly found Plaintiff not disabled

because, contrary to both Plaintiff's and his treating psychiatrist's opinions of total disability, neither his physical or mental impairments prevent him from participating in substantial gainful activity. (See Def. Mem. at 35-37.) The Commissioner asserts 1) that the medical evidence does not support a claim of total disability and no doctor indicated that Plaintiff's physical impairments by themselves prevented him from working (see id. at 35-37), 2) that little weight should be attributed to the treating physician's opinion of Plaintiff's total disability because that opinion is unsupported by the psychiatrist's own examinations and is inconsistent with other evidence in the record (see id.at 37-39), and 3) that Plaintiff's subjective complaints are not entirely credible where the medical records and his own assertions to his physician do not support the severity of the allegations in his statements and testimony (see id. at 42-45).

In his five-step analysis, the ALJ properly decided the first three steps. At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since February 28, 2010, the alleged onset date." (Rec. at 10.) At step two, the ALJ found that Plaintiff suffered from "severe impairments" including "seizure problems, COPD, sleep apnea, GERD, Barrett's Esophagus, obesity, major depressive disorder, and generalized anxiety disorder."[1] (Id.) And at step three, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments." (Id. at 10-11.)

At step four, the ALJ found that Plaintiff has the residual functional capacity to perform the "full range of light work as defined in 20 C.F.R. § 404.1567(b) except he must avoid asthma irritants."[2] (Id. at 11.) He is limited to work that "does not entail responsibility for the well-

---

[1] The ALJ wrote that Plaintiff had seizure problems. (Rec. at 10.) This appears to be a mistake as there is no discussion of seizures in the record. (See, e.g., Rec. at 140, 356, 518, 580, 637.) However, the ALJ did not discuss seizures other than noting them at page 10 of his decision. (See Rec. at 8-19.)
[2] "Light work" is defined as follows:

being and safety of others or work that has production rate quotas in an environment with limited public contact with no more than 25 people." (Id.) Based on Plaintiff's residual functional capacity, the ALJ found at step four that Plaintiff was "unable to perform his past relevant work" but, at step five, he was "able to adjust to other jobs existing in significant numbers in the national economy." (Id. at 17.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Id. at 18-19.)

In making his assessment of Plaintiff's disability, the ALJ rejected a treating physician's opinion of total disability. (Id. at 12-14, 16.) However, the ALJ provided little analysis for failing to give a treating physician's opinion controlling weight. Thus, the court finds that the ALJ's opinion was insufficient in supplying "good reasons" for rejecting the treating physician's opinion. See 20 § C.F.R. 404.1527(c)(2). Additionally, this lack of analysis taints the ALJ's evaluation of whether Plaintiff's testimony and statements are credible in light of the objective medical evidence.

## A.     Plaintiff's Physical Impairments

The ALJ properly found that although Plaintiff suffers from several severe impairments including COPD, sleep apnea, GERD, Barrett's Esophagus, and obesity, he had no physical limitations that, by themselves, would prevent him from engaging in substantial gainful activity. (Rec. at 12.) The ALJ considered the entirety of the record, including examinations and

---

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

statements from Plaintiff's treating and non-treating physicians, and found no indications of disabling limitations. (Id. at 12-14.) All of Plaintiff's treating physicians for his physical ailments were accorded controlling weight and the ALJ determined that their opinions were consistent with Plaintiff's residual functional capacity. (Id. at 16.)

Moreover, Plaintiff underwent an internal medical evaluation on September 19, 2011, by Iqbal Teli, M.D. (Id. at 356-58.) Dr. Teli's examination ultimately found that Plaintiff has a history of hypertension and, in his medical source statement, opined that his prognosis was stable and that he should avoid dust and other respiratory irritants due to a history of asthma. (Id. at 357.)

Finally, a state agency medical consultant, W. Wells, M.D. completed a functional assessment and opined that Plaintiff did not have an impairment that met the requirements of a listing. (Id. at 309, 386.) Dr. Wells' assessment stated Plaintiff was unlimited in standing and/or walking, unlimited in lifting and carrying, and should avoid concentrated dust and fumes. (Id.)

## B. Evaluation of Plaintiff's Treating Psychiatrist

The ALJ failed to evaluate properly the opinion of psychiatrist, Alicia Hurtado, M.D., Plaintiff's treating physician during the relevant period. A "treating physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual."[3] Sokol v. Astrue, No. 04-CV-6631 (KMK), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (internal quotation marks omitted). Under the SSA's regulations, "a treating physician's report is generally given more weight than other reports." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). The SSA's "treating physician rule" requires an ALJ to give a treating physician's opinion "controlling weight" if "the issue(s) of the nature and severity of [the claimant's]

---

[3] It is undisputed that Dr. Hurtado qualifies as a "treating physician" under this definition.

impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, "[w]hen other substantial evidence in the record"— such as other medical opinions—"conflicts with the treating physician's opinion, . . . that opinion will not be deemed controlling." Snell, 177 F.3d at 133. And in any case, "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner" and are therefore never given controlling weight. Id. (internal quotation marks omitted).

Even when an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the assessment. See 20 C.F.R. § 404.1527(c)(2). Specifically, the ALJ must assess "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2)-(6). While an ALJ need not mechanically recite each of these factors, the ALJ must "appl[y] the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). The court will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" or when the court "encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33.

Dr. Hurtado, the treating physician at issue, was a psychiatrist at the World Trade Center Mental Health Program at the Mount Sinai School of Medicine ("WTC Center"). (Rec. at 244.) She treated Plaintiff monthly in 2011 and 2012 for symptoms consistent with PTSD, major

depressive disorder, recurrent, moderate without psychotic features, and panic disorder without agoraphobia. (Id. at 243.) In a letter dated June 17, 2011, Dr. Hurtado opined that Plaintiff's psychiatric symptoms developed as a result of exposure to "multiple traumatic events during his work at Ground Zero on September 11, 2001, and thereafter." (Id.) Dr. Hurtado opined that Plaintiff was "totally disabled secondary to his psychiatric symptoms and is unable to work at this time." (Id.) In the same letter, she averred that his symptoms included panic attacks which occurred "out of the blue" along with heart palpitations, shortness of breath, and dizziness. (Id.) Additionally, she stated that Plaintiff presented with symptoms of depression, such as feelings of hopelessness, extreme guilt, and decreased energy, and that he "endorsed symptoms of post-traumatic stress disorder that include severe anxiety on most days, severe insomnia, difficulties with memory, social withdrawal, avoidance of all [September 11, 2001, attack]-related issues, dissociation, and irritability." (Id.) She opined that he avoided "seeking treatment as a way of avoiding the [September 11, 2001] traumatic events experienced." (Id.) She prescribed Paxil, Alprazolam, and Klonopin and stated that Plaintiff started group therapy. (Id.)

The ALJ rejected Dr. Hurtado's opinion of totally disability. (Id. at 14, 16.) The ALJ reasoned that Dr. Hurtado's opinion would not receive controlling weight because the testifying medical expert, Dr. Grand, disagreed with her assessment of total disability and that Dr. Grand's opinion was better supported by the record. (Id. at 13,16.) Dr. Grand opined that Plaintiff's mental impairments were only limiting rather than fully disabling, and that he had significant improvement with his current treatment regimen. (Id.) The ALJ concluded that the medical expert's testimony was thorough and subject to "extensive cross examination." (Id. at 14.)

In order to determine whether the ALJ properly evaluated Dr. Hurtado's opinion, the court must first decide whether that opinion was entitled to controlling weight. See 20 C.F.R.

§ 404.1527(c)(2). If not, the court must decide whether the ALJ provided "good reasons" for discounting Dr. Hurtado's opinion, see Halloran, 362 F.3d at 33, based on the factors set forth in the regulations, see 20 C.F.R. § 404.1527(c)(2).

>    1.    Controlling Weight

The ALJ properly found that Dr. Hurtado's opinion was not entitled to controlling weight because it lacked support and was inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2); Snell, 177 F.3d at 133. Dr. Hurtado's June 17, 2011, letter opining total disability failed to reconcile her own findings of Plaintiff's improvement and abated symptoms. (See Rec. at 243-44.) Moreover, Dr. Hurtado's June 17, 2011, assessment, conflicts with the opinions of Dr. Grand, Herb Meadow, M.D., and psychiatric medical consultant R. McClintock, M.D., which were consistent with a residual functional capacity for light work. (See id. at 50-56, 351-54, 394-402, 414-17.)

>    (i.)    Dr. Hurtado's Opinion

On January 24, 2011, Dr. Hurtado, recorded that Plaintiff had multiple panic attacks daily lasting about two to three minutes with palpitations, accelerated heart rate, diaphoresis, shortness of breath, dizziness, and feelings of derealization. (Id. at 382.) Plaintiff also reported he felt depressed, had decreased energy, felt hopelessness, and had difficulty concentrating and sustaining attention. (Id.) Dr. Hurtado observed that Plaintiff was anxious but was well-groomed, well-related, cooperative and pleasant, goal directed, coherent, and with appropriate insight and judgment. (Id. at 383.) Dr. Hurtado also recorded Plaintiff experienced irritability, hypervigilance, and problems sleeping. (Id.) She diagnosed PTSD, panic disorder without agoraphobia, and major depressive disorder, recurrent, moderate without psychotic features. (Id. at 384.) She stated that his psychiatric problems included a "depressed mood most of the day, . . . loss of appetite, insomnia, decreased energy, diminished ability to concentrate, [and] recurrent

11

suicidal ideation without a specific plan." (Id.) Dr. Hurtado prescribed 12.5 mg of Paxil and 0.5 mg of Klonopin daily. (Id.)

Plaintiff described similar symptoms at his second visit with Dr. Hurtado on February 7, 2011. (Id. at 378-80.) Dr. Hurtado recorded that Plaintiff took his medications incorrectly. (Id. at 379.) Plaintiff reported having continued panic attacks, feeling excessively tired, and having extreme anxiety multiple times per day. (Id.) Dr. Hurtado again observed that Plaintiff was well-groomed, well-related, and calm and cooperative, that he was panicky but less dysphoric and anxious, and that he had appropriate insight, judgment, and overall was "stable within established limits." (Id.)

At Plaintiff's four appointments with Dr. Hurtado preceding her June 17, 2011, letter (after approximately two months of treatment), Dr. Hurtado documented Plaintiff's continual improvement. (See id. at 316, 318-319, 322, 325.) At his March 7, 2011, appointment with Dr. Hurtado, Plaintiff averred that he experienced one to two panic attacks per week and that they were "less frequent and less intense" than they had been previously but also that he had "excessive daytime sleepiness." (Id. at 325.) At Plaintiff's April 8, 2011, appointment with Dr. Hurtado, Plaintiff reported a "much improved mood . . . including feeling less depressed and anxious." (Id. at 322.) He stated that he continued to have panic attacks but they were "occurring in less frequency and intensity" and that he was "able to talk [himself] down from the panic attacks." (Id.) He also reported and that he was sleeping through the night. (Id.)

During his May 9, 2011, appointment with Dr. Hurtado, Plaintiff reported that his panic attacks had decreased to once per week, that he had "decreased feelings of sadness and somatic preoccupations," and continued improvement of his mood on his medication regimen. (Id. at 318-19.) During his June 7, 2011, appointment, Plaintiff reported that overall he was "much

better," but he had a "few ups and downs." (Id. at 316.) He also asserted that he was sleeping well, denied having any "recent panic attacks," and denied feeling hopeless or worthless. (Id.) At all four of these appointments, Dr. Hurtado documented that Plaintiff was well-groomed, well-related, calm and cooperative, had appropriate insight and judgment, was able to pay and sustain attention, was in a "better" mood, was less anxious and dysphoric, and overall that he was "improving." (Id. at 316, 318-319, 322, 325.)

Dr. Hurtado's reports of improvement continued after her June 2011 letter. During his July 25, 2011, appointment with Dr. Hurtado, Plaintiff denied any panic attacks in the past month and said he was somewhat less anxious on his current medication regimen. (Id. at 312.) Plaintiff reported continued anxiety, but also said his depression and energy level had improved, was taking care of himself, had improved sleep, and denied any medication side effects, chest pains, or shortness of breath. (Id. at 313.) Although she recorded that Plaintiff was "somewhat anxious" and "jittery," Dr. Hurtado reiterated that Plaintiff's overall trend of improvement continued and that he was in a "better" mood and had a less anxious and dysphoric affect. (Id.) By his October 25, 2011, appointment with Dr. Hurtado, Plaintiff reported "no recent panic attacks" and "[n]o flashbacks." (Id. at 608.) Plaintiff reported difficulty falling asleep at night which Dr. Hurtado opined may be secondary to "untreated sleep apnea." (Id.) Otherwise, Dr. Hurtado recorded that Plaintiff was still improving. (Id.) Finally, in a letter dated February 10, 2012, Dr. Hurtado acknowledges Plaintiff's treatment since January 2011 and his diagnosis. (Id. at 673.) She doesn't discuss his symptoms or opine on his limitations but notes that "throughout treatment he has remained adherent to schedule appointments and medication treatment." (Id.)

The record does not reflect whether Plaintiff's improvements were significant enough that Dr. Hurtado would reconsider whether she believed Plaintiff was "totally disabled." Neither

Dr. Hurtado's June 2011 letter nor February 2012 letter attempts to reconcile the inconsistency between her ongoing documentation of Plaintiff's ability to pay and sustain attention, appropriate insight and judgment, lessening anxiety, and overall trend of improvement with her statement opining total disability. (See id. at 243-44.) Nor does Dr. Hurtado address her prior notes to the effect that Plaintiff reported fewer and less intense panic attacks, denied that he felt hopeless or worthless, or that his sleep had improved. (Id.) Thus, Dr. Hurtado's June 2011 opinion of total disability lacked support and was inconsistent with her own preceding medical notes – other substantial evidence in the record. See Snell, 177 F.3d at 133; see also 20 C.F.R. § 404.1527(c)(2).

Dr. Hurtado's clinic notes also undermine the credibility of Plaintiff's testimony and statements regarding his functional limitations related to mental impairments. In determining whether a plaintiff is disabled, the ALJ considers "[the plaintiff's] symptoms and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). However, the ALJ will not reject a plaintiff's statements about the intensity and persistence of pain or other symptoms or about the effect they have on the plaintiff's ability to work "solely because the available objective medical evidence does not substantiate [his or her] statements." 20 C.F.R. § 404.1529(c)(2). Furthermore, "since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [the ALJ] will carefully consider any other information [the plaintiff] may submit about [his or her] symptoms." 20 C.F.R. § 404.1529(c)(3). Among other things, other evidence includes statements made by the plaintiff

and reports from treating sources.[4] 20 C.F.R. § 404.1529(a). At the hearing, Plaintiff testified

that he had panic attacks four or five times per week, each lasting at least 15 minutes (Rec. at 54)

and that he had major problems with sleep (id. at 43). However, at his appointments with Dr.

Hurtado from April through October 2011, Plaintiff reported significant abatement of his panic

attacks, improved sleep, and somewhat lessened anxiety. (See id. at 312-13, 316, 318-19, 322,

608.) Significantly, Plaintiff's claims regarding his functional limitations are also unsupported

by other, non-treating physicians' statements in the record. (See id. at 51-52, 353-54, 414-18.)

However, Plaintiff's allegations are supported by Dr. Hurtado's June 2011 letter (id. at 243),

which was discounted by the ALJ and will be discussed further below.

### (ii.)  Dr. Grand's Testimony

As the ALJ notes, Dr. Grand's conclusions were also inconsistent with Dr. Hurtado's

June 2011 letter. Based on the record, Dr. Grand opined that Plaintiff's severe impairments did

not equal or meet a Medical Listing. (Id. at 50.) Dr. Grand testified that Plaintiff's mental status

"improved significantly" and that this happened "really after only two to three months of

treatment" with his panic attacks decreasing from several times per day to being very limited.

(Id. at 51.) Dr. Grand opined that Plaintiff, even with treatment, had residual symptoms

including anxiety around crowds, some difficulties with concentration, and an over-

preoccupation with his health concerns. (Id.) Nevertheless, she testified that he would be able

to work in a low stress job in which he is not responsible for the well-being or safety of others,

has no more than moderate contact with the public, and is in a non-crowded work environment

with no more than twenty-five people. (Id. at 51-52.) She opined that Plaintiff could do

---

[4] The ALJ must consider all of the evidence presented, including information about Plaintiff's prior work record, statements about Plaintiff's symptoms, evidence submitted by Plaintiff's treating or nontreating source, and observations by the ALJ's employees and other persons. 20 C.F.R. § 404.1529

complex work, and could make job-related discretionary decisions, but that he could not handle more than moderate production quotas. (Id. at 52.)

(iii.)    Dr. Meadow's Evaluation

Dr. Meadow's consultative examination of Plaintiff and subsequent medical opinion on September 19, 2011, conflicted with Dr. Hurtado's opinion of total disability. (See id. 351–54.) Dr. Meadow ultimately gave Plaintiff a "fair" prognosis and opined that his exam results, although consistent with psychiatric problems, "[did] not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis." (Id. at 353-54.)

Dr. Meadow similarly diagnosed Plaintiff with PTSD, depressive disorder not otherwise specified, and panic disorder without agoraphobia. (Id. at 353.) However, in his medical source statement, Dr. Meadow opined that Plaintiff "could perform complex tasks independently, learn new tasks, maintain attention and concentration, make appropriate decisions, relate adequately with others, and deal with stress. (Id.) Dr. Meadow opined that Plaintiff may have "some difficulty maintaining a regular schedule if he has to travel by public transportation because of his panic attacks in crowded spaces." (Id.)

Dr. Meadow recorded that Plaintiff "was cooperative," "well groomed," had "coherent and goal directed" thought processes, and that he was "appropriate in speech and thought content." (Id. at 352.) While he found Plaintiff to be depressed, he found his attention and concentration to be intact for counting, calculations, and serial threes from twenty. (Id. at 352-53.) Dr. Meadow found Plaintiff's recent and remote memory skills intact, his cognitive functioning "average," and his insight and judgment "fair." (Id. at 353.)

Plaintiff presented with complaints of difficulty falling asleep, depression with dysphoric moods, irritability, loss of usual interests, low energy, diminished self-esteem, and difficulty

16

concentrating. (Id. at 351-52.) Plaintiff had passive suicidal thoughts without intent and flashbacks and nightmares about the September 11, 2001, World Trade Center events. (Id. at 352.) Plaintiff also reported his panic attacks, which occurred at varying frequency, were caused by crowded spaces, precipitating with palpitations and sweating. (Id.)

### (iv.)  Dr. McClintock's Findings

The opinions of Dr. McClintock, a state agency reviewing physician, were also inconsistent with those of Dr. Hurtado and mostly supportive of Dr. Grand's findings. (See id. at 394-407, 414-18.) On November 16, 2011, Dr. McClintock reviewed Plaintiff's medical records and completed a psychiatric review technique form (id. at 394-407) and a mental residual functional capacity assessment (id. at 414-18). In his residual functional capacity narrative, Dr. McClintock acknowledges seeing Dr. Hurtado's June 2011 opinion in the records but found that Plaintiff's "current condition shows him to be capable of basic occupational activities, such as he performed fairly recently, as a [s]ecurity [g]uard at the Stock Exchange." (Id. at 417.) Dr. McClintock also wrote there was a "clear problem w[ith] credibility in terms of [Plaintiff's] alleged functional limitations." (Id.)

In his psychiatric review technique form (id. at 394-407), Dr. McClintock opined that Plaintiff did not meet or medically equal the criteria of listings in 12.04 (affective disorders) or 12.06 (anxiety related disorders). [5] (Id.) Furthermore, Dr. McClintock did not find that Plaintiff was "markedly limited" in any of the "B" criteria of listings (id. at 404). He found only mild limitations in activities of daily living and "only one or two" repeated episodes of deterioration, each of extended duration. And he found only moderate limitations in social functioning and in

---

[5] The required level of severity for 12.04 and 12.06 disorders is met when the requirements in both "A" and "B" criteria are satisfied, or when the requirements in "C" are satisfied. See 20 C.F.R. § 404app. 1.

maintaining concentration, persistence, or pace. He did not complete the form for "C" criteria of listings (id. at 405).

In the residual functional capacity assessment form, Dr. McClintock stated that Plaintiff's understanding and memory were "not significantly limited" and that he may be "moderately limited" in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, or to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.[6] (Id. at 414.) Dr. McClintock found that Plaintiff is "moderately limited" in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Id. at 415.) He judged Plaintiff to be "moderately limited" in some social interactions such as accepting instructions and responding appropriately to criticism from supervisors or maintaining socially appropriate behavior. (Id.) He reported that Plaintiff is "moderately limited" in his ability to respond appropriately to changes in the work setting, to travel in unfamiliar places or use public transportation, to set realistic goals, or make plans independently of others. (Id.)

(v.)     Dr. Sodaro and Dr. Ilardi

Plaintiff had two other treating physicians for his mental impairments, neither of whose views were discussed in the ALJ's decision. Melissa Ilardi, Ph.D., a clinical psychologist at the WTC Center, wrote a letter acknowledging that she "treat[s] [Plaintiff] in once weekly psychotherapy" for panic disorder with agoraphobia since July 26, 2011.[7] (Id. at 683.)

---

[6]  The form allows the reviewing physician to give Plaintiff assessments of "not significantly limited," "moderately limited," "markedly limited," "no evidence of limitation in this category, or "not ratable on available evidence." (See Rec. at 414-416.)
[7]  Dr. Ilardi was still providing Plaintiff with weekly treatment Plaintiff at the time of his hearing. (Rec. at 48.)

However, she provides no opinion on Plaintiff's functional limitations and there are no other documents in the record from Dr. Ilardi. (Id.)[8]

Psychiatrist Edward Sodaro, M.D., states that he has treated Plaintiff for anxiety symptoms in supportive individual psychotherapy approximately every six weeks since May 19, 2010.[9] (Id. at 239, 467, 662.) There are three documents entitled "Psychiatric Examination of Michael Murphy" in the record from Dr. Sodaro dated May 7, 2011, (id. at 239), December 12, 2011 (id. at 467), and February 3, 2012 (id. at 663). Dr. Sodaro did not opine on Plaintiff's functional limitations based on his mental impairments. (See id. at 239-42, 467-71, 662-66.) Also, it is unclear whether his reports reflect an update of Plaintiff's assertions of his own symptoms over time or merely a statement of his medical history. Nevertheless, Dr. Sodaro's objective observations are consistent with Dr. Meadow's (id. at 251-54) and Dr. Grand's opinions (id. at 50-57). They are also consistent with Dr. Hurtado's medical notes although not necessarily with her opinion of total disablement. (See id. at 239-42, 467-71, 662-66.)

In each of Dr. Sodaro's letters, he observed that Plaintiff's mood was "dysphoric" and that he "seem[ed] "anxious and fidgety." (Id. at 241, 470, 665.) However, Dr. Sodaro also recorded that Plaintiff's recent and remote memory were intact, that he was well oriented to person, place, and time, and that his alertness and concentration appeared to be normal. (Id. at 247, 469-70, 664-65.) He documented Plaintiff's own assertions that, among other things, he had difficulty with several daily activities, had significant symptoms with worrying, an inability to sit still, was easily exhausted, and had trouble concentrating. (Id. at 240, 468, 663.) Dr. Sodaro also reported Plaintiff's assertions that it was very difficult for him to get along with

---

[8] The New York State Office of Temporary and Disability Assistance sent letters to Dr. Ilardi requesting her reports. (Rec. at 360 (August 23, 2011, follow-up to letter dated August 10, 2011, requesting evidence).)

19

people, that he felt depressed, had trouble sleeping, had night terrors "every night," and suffered panic attacks. (Id.)

Because Dr. Hurtado's opinion of total disability was inconsistent with her own medical records, as well as the conclusions of Dr. Grand, Dr. Meadow, and Dr. McClintock, it was not entitled to controlling weight. See 20 C.F.R. § 404.1527(c)(2).

### 2. Good Reasons

Thus, the question for the court is whether the ALJ provided "good reasons" for discounting Dr. Hurtado's opinion of total disability, see Halloran, 362 F.3d at 33, based on the factors set forth in the regulations. See 20 C.F.R. § 404.1527(c)(2). The ALJ failed to adequately accord "good reasons" for rejecting Dr. Hurtado's opinion and leaves the court unable to properly assess whether the ALJ's findings were based on substantial evidence. See Halloran, 362 F.3d at 33; see also 20 C.F.R. § 404.1527(c)(2).

The ALJ's decision rejected Dr. Hurtado's opinion of total disability because: (1) Dr. Grand, the medical expert at the hearing, "disagreed and concluded that while the claimant's mental impairments impose limitations, they are not disabling limitations and he has significant improvement with his current regimen"; (2) that "the medical expert's testimony was thorough, well supported by the record and was subject to extensive cross examination"; (3) that Dr. Grand's conclusion was better supported by the record than Dr. Hurtado's conclusion; and (4) that "the record does not establish the criteria of any disabling mental limitations to prevent Plaintiff from engaging in substantial gainful activity." (Rec. at 14, 16.)

These reasons may explain why the ALJ accorded Dr. Grand's opinion such weight, but fail to explain why Dr. Hurtado's opinion should be rejected. See cf. Schisler v. Sullivan, 3 F.3d

---

[9] It appears that, at the time of Plaintiff's hearing, Dr. Sodaro was still treating Plaintiff approximately every two months. (Rec. at 48.)

563, 570 (2d Cir. 1993) ("Where the opinion of a treating source is being rejected or overridden, there must be . . . an explanation as to why the substantial medical evidence of record contradicts the opinion(s) of a treating source(s). This discussion must be set out in a determination or decision rationale.") Moreover, the ALJ failed to discuss specific evidence for according more weight to the findings of Dr. Grand, a non-treating physician who did not personally examine Plaintiff, over the findings of Dr. Hurtado, when more weight is generally placed on the opinion of doctor who has personally examined the plaintiff. See 20 C.F.R. § 404.1527(c)(2).

The ALJ cites Dr. Grand's findings that Plaintiff was able to work with some limitations. (Rec. at 12.) However, the only evidence the ALJ offers in support of his assertion that Dr. Grand's opinion is better supported by the record than the treating physician's is: 1) that Plaintiff's mental status improved after two to three months of treatment with his panic attacks becoming very limited and decreasing from several times a day to not happening in over a month at a time (id. at 12); and 2) that Dr. Meadow's source statement maintained that Plaintiff's psychiatric problems do not in themselves appear to be significant enough to interfere with his ability to function on a daily basis and Plaintiff would be able to perform complex tasks independently, learn new tasks, maintain attention and concentration, make appropriate decisions, relate adequately with others, and deal with stress (id. at 13).

First, while it is significant that Plaintiff's symptoms abated, the statement that a patient has improved does not automatically make an opinion of total disability inconsistent with the record—it only indicates that the plaintiff's health is better than before. Second, the ALJ did not explain why he gave Dr. Meadow's opinion more weight than Dr. Hurtado's when Dr. Meadow only examined Plaintiff once. (Id. at 16); see cf. Pogozelski, 2004 WL 1146059, at *13 (ALJ erred in according "more than limited weight" to opinion of physician who had examined the

21

claimant on only one occasion); Crespo v. Apfel, No. 97-CV-4777 (MGC), 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17, 1999) (noting that a "consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day").

In rejecting the treating physician's opinion, the ALJ failed to consider fully the substance of the previously discussed relevant factors under 20 C.F.R. § 404.1527(c)(2)-(6). See also Schaal, 134 F.3d at 503. Dr. Hurtado treated Plaintiff monthly in 2011. (See Rec. at 312-29, 378-80, 607-12.) Other than a passing mention that Plaintiff started treatment with Dr. Hurtado in January of 2011, the ALJ did not adequately consider the first factor – the frequency of examination and the length, nature and extent of the treatment relationship. (Id. at 12.) Similarly, the ALJ failed to adequately assess the second factor – the evidence in support of Dr. Hurtado's opinion. The ALJ merely asserted that Dr. Grand's conclusion was better supported and that the record does not establish criteria of disabling mental limitations. (Id.) As previously discussed, the ALJ failed to sufficiently discuss the consistency of Dr. Hurtado's opinion with the record as a whole – the third factor. Although the ALJ stated perfunctorily that Dr. Hurtado is a psychiatrist, he did not give any consideration to the fact that she is a specialist, the fourth factor in the regulations. (Id.) Finally, it is not clear that the ALJ considered the fifth factor – other relevant factors.[10] The only discussion of Dr. Hurtado's treatment of Plaintiff concerned the contents of her June 2011 letter. (Id. at 12-14, 16.)

---

[10] When considering how much weight to give to a medical opinion, the ALJ must also consider any factors brought to their attention which tend to support or contradict the opinion. The regulation cites examples of relevant factors including "the amount of understanding of [the] disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in [the] case record."

20 C.F.R. § 404.1527 (c)(6)

The ALJ failed to provide "good reasons" for the lack of weight he gave to Dr. Hurtado's opinion. The court must now remand his case for a proper evaluation of Dr. Hurtado's opinion.

### C.    Evaluation of Plaintiff's Credibility

The ALJ determined that Plaintiff's statements and testimony "while somewhat credible and somewhat supported by the record," were inconsistent with the residual functional capacity assessment and could not be corroborated by objective medical evidence. (Rec. at 12, 14.) This evaluation was tainted by the ALJ's failure to properly evaluate the opinion of Plaintiff's treating physician—a failure that would naturally have affected how the ALJ viewed Plaintiff's statements and testimony. On remand, the ALJ is directed to consider Plaintiff's subjective complaints in light of the ALJ's fresh evaluation of Dr. Hurtado's opinion. See Sutherland, 322 F. Supp. 2d at 291 (because the ALJ's failure to properly apply the treating physician rule "affect[ed] consideration of the ALJ's treatment of the plaintiff's subjective complaints," the court would "not now consider" plaintiff's argument that the ALJ did not properly consider her complaints).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Judgment on the Pleadings is DENIED and this case is REMANDED to the Commissioner for a proper evaluation of Dr. Hurtado's opinuion and a reevaluation of Plaintiff's subjective complaints in light of all the medical evidence.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      August 19, 2014

NICHOLAS G. GARAUFIS
United States District Judge